IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARSON HELICOPTERS, INC.<br>952 Blooming Glen Road<br>Perkasie, Pennsylvania 18944<br><br>and<br><br>CARSON HELICOPTER SERVICES, INC.,<br>828 Brookside Boulevard<br>Grants Pass, Oregon 97526<br>**Plaintiffs,**<br><br>v.<br><br>HOUSTON CASUALTY COMPANY<br>13403 Northwest Freeway<br>Houston, Texas 77040<br>**Defendant.** | Civil Action No. _____<br><br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR ANTICIPATORY BREACH OF CONTRACT
AND FOR DECLARATORY JUDGMENT**

The Plaintiffs, Carson Helicopters, Inc. ("Carson Helicopters") and Carson Helicopter Services, Inc. ("Carson Services" and, collectively with Carson Helicopters, "Carson"), by Counsel, for their Complaint against Defendant Houston Casualty Company ("HCC") allege and states as follows:

I.     **NATURE OF THIS ACTION**

1. This is an insurance coverage action arising out of an aviation accident that took place on August 5, 2008, in California (the "Accident"). The accident involved a helicopter owned by Carson supplied to the United States Forest Service ("USFS") under a government-approved and sanctioned contract mandating the exclusive "public" use of the helicopter for the

USFS. The Accident took place while that helicopter was involved in fire-fighting activities under the total control of the USFS. Nine persons died in the accident, and 4 were injured.

2. On or about September 19, 2008, Richard Charlson, acting on behalf of the estate of Scott Charlson, initiated a civil case against Carson Helicopters, United Technologies Corp., Sikorsky Aircraft Corp., General Electric Company and Does 1 through 100 in the Superior Court of the State of California in and for the County of Shasta, California, seeking damages in an unspecified amount on account of the Accident, Case No. SCRDCVPO-08-0164318 (the "Lawsuit"). Upon information and belief, others have retained counsel in connection with the Accident.

3. Carson purchased from HCC an insurance policy providing coverage for bodily injury (including death) arising out of a helicopter accident, and it has paid all of the premiums due and has complied with any and all other obligations under that policy. Carson is a named insured under the HCC policy. The HCC policy provides for a $25,000,000 per occurrence and annual aggregate coverage limit for damages arising out of bodily injury caused by an accident involving a Carson helicopter when the helicopter is "in the possession or under the control" of someone other than Carson. At the time of the Accident, the helicopter was in the possession and under the control of the USFS. Notwithstanding these facts, HCC, upon information and belief, has rejected coverage under the provisions of the insurance agreement providing for the $25,000,000 coverage limit and HCC will not acknowledge that the $25,000,000 coverage limit applies to damages that may be incurred by Carson in connection with the Lawsuit and the Accident. Accordingly, Carson seeks (i) damages in an amount to be determined at trial due to HCC's anticipatory breach of the insurance contract; (ii) a judgment declaring that the $25,000,000 coverage limit applies to losses related to the Lawsuit and the Accident; and (iii) Carson's attorneys' fees, costs and interest.

## II. PARTIES

4. Plaintiff Carson Helicopters, Inc. is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 952 Blooming Glen Road, Perkasie, Pennsylvania 18944.

5. Plaintiff Carson Helicopter Services, Inc. is a corporation organized under the laws of the State of Oregon with its principal place of business at 828 Brookside Boulevard, Grants Pass, Oregon 97526.

6. Carson, by itself and through its affiliates, provides an array of helicopter-related services including cargo and personnel transport, wildfire suppression, emergency search and rescue and construction services. Carson also has significant research and development operations and has developed numerous proprietary technologies for use on Sikorsky S-61 model helicopters. As part of its overall business operations, Carson owns a fleet of fifteen helicopters (the "Aircraft").

7. Upon information and belief, Defendant Houston Casualty Company is a Texas-domiciled property and casualty insurance company with its principal place of business at 13403 Northwest Freeway, Houston, Texas 77040.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and Plaintiff is a citizen of the Commonwealth of Pennsylvania and Defendant is, upon information and belief, a citizen of the State of Texas.

9. This Court has personal jurisdiction over HCC because HCC was authorized to do business in the Commonwealth of Pennsylvania on a surplus lines basis within the time period

relevant to the claims stated herein and has transacted, or is transacting, business in Pennsylvania.

10. This Court also has personal jurisdiction over HCC because the insurance policy at issue was sold by HCC in this judicial district and delivered to Carson in this judicial district.

11. Venue of this action is properly laid in this judicial district pursuant to 28 U.S.C. § 1391(a) because the causes of action at issue herein arose in this judicial district and because the insurance policy at issue was sold by HCC in this judicial district and delivered to Carson in this judicial district.

## IV.   BACKGROUND

### A.   The Insurance Policy

12. Carson purchased insurance policy number 013755-016 (the "Policy") from HCC. Carson is a "Named Insured" under the Policy. Carson incorporates the Policy by reference herein. A copy of the Policy is attached to this Complaint as **Exhibit "A"**.

13. The Policy covers the period of April 1, 2008 to April 1, 2009.

14. The helicopter involved in the accident referenced above is specifically identified on a "Schedule of Aircraft" located at page 4 of the Policy.

15. The Policy states that the purpose for which the aircraft will be used is "Purposes as required by the Named Insured including, but not limited to, helicopter logging, aerogravity survey, fire fighting, heavy lifting, and test flying."

16. Carson paid substantial premiums to HCC as consideration for the insurance coverage provided by the Policy.

17. Endorsement 8 to the Policy, entitled "Premises, Products-Completed Operations and Hangarkeepers Liability Coverage" ("Endorsement 8"), provides the following coverage:

Aviation Products-Completed Operations Liability

> The Policy will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury and property damage caused by an occurrence and arising out of the Insured's aviation operations and/or the possession, use, consumption or handling of any goods or products manufactured, constructed, altered, repaired, serviced, treated, sold, supplied or distributed by the Named Insured or its employees, <u>and then only after such goods or products have ceased to be in the possession or under the control of the Insured</u>.

See Endorsement 8 to the Policy, **Exhibit "A"**, at 2 (emphasis supplied). Endorsement 8 provides this Aviation Products-Completed Operations liability insurance in an amount of up to $25,000,000 per occurrence and in the annual aggregate.

18. By its terms, the Aviation Products-Completed Operations Liability insurance discussed in paragraph 17, supra, provides Carson with up to $25,000,000 in liability insurance for bodily injury and property damage caused by an occurrence arising out of Carson's aviation operations when the helicopter involved is "in the possession or under the control" of someone other than Carson.

### B.   The USFS Operations and the Accident

19. Among other activities, Carson uses its aircraft to provide "exclusive use" helicopter services under government contract to the USFS pursuant to USFS contracts AG-024-B-C-08-9340 (National Exclusive Use Large Fire Support Helicopter Services) and AG-024-B-C-08-0354 (National Exclusive Use Initial Attack Helicopter Services) (collectively, the "USFS Contracts").

20. Carson provides a range of wildfire-fighting services under the USFS Contracts, including, but not limited to, dropping water or fire retardant on fires and carrying cargo and/or passengers in support of ground-based wildfire-fighting activities. Pursuant to the terms of the USFS Contracts and applicable laws and regulations, the aircraft provided by Carson to the USFS under the USFS Contracts are public use aircraft under the exclusive control of the USFS.

Thus all services provided by Carson to the USFS under the USFS Contracts are, and at all times relevant to this action have been, under the control of the USFS.

21. On August 5, 2008, one of the aircraft in the possession and control of the USFS under its contracts with Carson crashed shortly after takeoff. At the time of the Accident the aircraft was carrying a total of 13 passengers, two Carson employees (the pilot and co-pilot of the aircraft), a USFS employee and ten contract firefighters. Nine of these people – the pilot, the USFS employee and seven of the contract firefighters – died in the Accident.

### C.     HCC's Repudiation of its Obligations Under the Policy

22. Carson timely provided HCC with notice of the Accident and any losses suffered as a result of the Accident.

23. Upon information and belief, HCC has rejected, or will reject, coverage under the Aviation Products-Completed Operations Liability provisions of Endorsement 8 to the Policy.

24. Upon information and belief, HCC will not acknowledge that the $25,000,000 liability limit in the Aviation Products-Completed Operations Liability provisions of Endorsement 8 to the Policy applies to damages incurred by Carson arising out of the Lawsuit and/or the Accident.

### COUNT I
### (Anticipatory Breach of Contract)

25. Carson repeats and realleges the allegations set forth in paragraphs 1 through 24, above, as if fully set forth in this Count I.

26. HCC has anticipatorily breached the terms of the Policy by rejecting coverage under the Aviation Products-Completed Operations Liability provisions of Endorsement 8 to the Policy.

27. HCC has anticipatorily breached the terms of the Policy by failing to acknowledge that the $25,000,000 liability limit in the Aviation Products-Completed Operations

Liability provisions of Endorsement 8 to the Policy applies to damages incurred by Carson arising out of the Lawsuit and/or the Accident.

28. As a direct and proximate result of HCC's anticipatory breach of contract, which is continuing as of the date of this Complaint, HCC has deprived Carson of the benefit of the insurance coverage for which Carson has paid substantial premiums.

29. As a direct and proximate result of HCC's anticipatory breach of contract, which is continuing as of the date of this Complaint, Carson has sustained, and will continue to sustain, substantial monetary damages, as well as attorneys' fees associated with bringing this action for coverage.

## COUNT II
### (Declaratory Judgment)

30. Carson repeats and realleges the allegations set forth in paragraphs 1 through 29, above, as if fully set forth in this Count II.

31. HCC is obligated to pay for any covered Carson damages arising out of the Lawsuit and/or the Accident under the Policy.

32. Carson has complied with all terms and conditions contained in the Policy, except to the extent its performance has been or is excused by HCC.

33. Carson contends that the Aviation Products-Completed Operations Liability provisions of Endorsement 8 to the Policy apply to any covered Carson damages arising out of the Lawsuit and/or the Accident.

34. By failing to acknowledge that the Aviation Products-Completed Operations Liability provisions of Endorsement 8 do not apply to Carson coverage with respect to the Accident, HCC has refused, or otherwise failed, to honor the totality of HCC's obligations under the Policy.

35. An actual controversy exists between Carson, on the one hand, and HCC, on the other, with respect to HCC's duties and obligations under the Policy, and the scope of coverage for Carson's losses related to the Lawsuit and/or the Accident.

36. Carson thus seeks a judicial determination that the Aviation Products-Completed Operations Liability provisions of Endorsement 8 to the Policy do apply to Carson's damages arising out of the Lawsuit and/or the Accident.

## **PRAYER FOR RELIEF**

WHEREFORE, Carson respectfully requests that the Court enter judgment against HCC as follows:

A. On Count I, for damages in an amount to be determined at trial;

B. On Count II, that this Court determine and declare that the Aviation Products-Completed Operations Liability provisions of Endorsement 8 to the Policy apply to damages arising out of the Lawsuit and/or the Accident;

C. On all counts, for attorneys' fees, interest, costs and the expenses of this action as provided for by 42 Pa.C.S. § 8371; and

D. For such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

_/s/ Kevan F. Hirsch_

Of Counsel:

David M. Nadler, Esquire
Richard J. Leveridge, Esquire
Barry J. Fleishman, Esquire
David Lee Tayman, Esquire
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006-5403
Tel: (202) 420-2200
Fax: (202) 420-2201

**Dated**: November 7, 2008

Kevan F. Hirsch, Esquire
I.D. No. 37383
David L. Black, Esquire
I.D. No. 93173
Kaplin Stewart Meloff Reiter & Stein, P.C.
910 Harvest Drive
P.O. Box 3037
Blue Bell, PA 19422
Tel: (610) 260-6000
Fax: (610) 260-1240
khirsch@kaplaw.com
dblack@kaplaw.com
Counsel for Plaintiffs